UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES                    *

         v.                      *              22-cr-00171-JMC

STACY LEE BOND                   *

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Comes now the Defendant, through undersigned counsel, and offers this

memorandum outlining the Defendant's position on sentencing and the underlying rationale.

Additionally, the Defendant incorporates by reference his objections to the draft presentence

report already on file with this Court.

### Introduction and Background

On January 5, 2023, Stacy Lee Bond, Defendant, will appear in front of this Court

having pleaded guilty to parading, demonstrating or picketing in a Capitol building in

violation of 40 U.S.C. § 5104(e)(2)(G).  This charge was the fourth count of a four count

criminal information alleging only misdemeanors.  The elements of the offense are that Mr.

Bond paraded, demonstrated or picketed in any of the United States Capitol Buildings and

that he did so willfully and knowingly.  This offense is a Class B misdemeanor with a

maximum sentence of six months and the sentencing guidelines do not apply.  The plea letter correctly notes that this Court could impose as much as five years of probation and a $5,000 fine, although for the reasons described in the draft presentence report ("the report"), Mr. Bond's ability to pay a fine is very limited.  Mr. Bond has, however, agreed to pay $500 in restitution and a $10 special assessment as part of the plea deal.  For the reasons stated below, Mr. Bond requests that this Court grant him the benefit of probation, a fully suspended sentence and impose no fine on top of the restitution and assessment described in the plea agreement.

Policy and Statutory Factors

The general policy in fashioning a sentence is embodied in 18 U.S.C. 3553(a): "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  The seven statutory factors are addressed below.

18 U.S.C. 3553(a)(1)  **The nature and circumstances of the offense and the history and characteristics of the  defendant.**

Certainly the events at the Capitol Building on January 6, 2021, were regrettable by any standard.  The report and the plea agreement on file with this Court detail the facts giving

2

rise to this case.  Mr. Bond's conduct on January 6 was more limited in scope and in duration than most of the other defendants.  Mr. Bond did enter the Capitol Building and remain there for about three minutes before leaving.  He was present with a large crowd.  However he did not personally engage in any acts of vandalism or violence.  Even when he was maced directly in the face, he did not respond violently.  Mr. Bond also had no weapons or defensive gear such as a helmet, goggles, mask or body armor.  He also did nothing to conceal his identity.  This is not an argument that he was merely present because he was on notice that he should not have entered the building as part of the disturbance and he is taking responsibility for his actions.

The report alleges that Mr. Bond "...did not do less than the average participant..." in Paragraph 25.  While that report does not give any general context or specific instances of conduct to what is considered the average participant on that unfortunate day, it is hard to imagine that many participants did less than Mr. Bond.

Mr. Bond is a 58 year old man.  He has spent much of his life, and substantially his entire adult life, in the Washington DC area.  He graduated from trade school in 1981.  His main source of work and income is doing home improvements and he sometimes works

under his brother, though they are no longer involved in the joint venture described in the report.  He is married and lives in Gaithersburg, Maryland, with his wife.

Mr. Bond's criminal record is minimal.  The extent of his criminal record is mostly county code and traffic violations with the exception of a misdemeanor violation of a domestic violence protection order, which Mr. Bond disputes, and a second degree assault for which he received a probation before judgment.  All of those offenses are more than ten years old.

It is also important to understand Mr. Bond's state of mind on January 6, 2021, and how an otherwise normal person could involve himself in those unfortunate events.  The years leading up to the events of January 6, 2021, had been unusually traumatic for Mr. Bond.  Mr. Bond's son, Eric, died in a car accident on July 16, 2008.  Eric was twenty two years old.  Mr. Bond's son, Cody, died of a fentanyl overdose on May 23, 2017.  Mr. Bond has no other children. Mr. Bond's nephew, Daniel Bond Jr. died December 24, 2020, also of a fentanyl overdose.  Shortly after the events of January 6, 2021, in February, Mr. Bond's brother Daniel Bond Sr. killed himself by hanging himself with a sweatshirt in a motel room.  While obviously his brother's death after the fact could not have contributed to Mr. Bond's state of

mind on January 6, it does provide some insight into the distress that Mr. Bond and his family members felt at that time.

During the early stages of the pandemic in 2020, Mr. Bond had almost no work. This put great financial strain on him. Normally, Mr. Bond and his wife both work out of necessity. He tried to find work that fit into the "essential worker" category but was largely unsuccessful. He struggled to keep himself occupied and spent much more time than normal watching the news, including the civil unrest in 2020.

Prior to January 6, at an earlier protest in Washington D.C., Mr. Bond personally witnessed left-wing counter protesters attacking supporters of Donald Trump.

Unfortunately, by January 6, Mr. Bond was very angry with what he saw as society stacking the deck against normal working people. Seeing two close family members die of fentanyl overdoses and what appeared to be a permissive policy towards violence targeting small businesses and ordinary people combined with the lockdowns caused Mr. Bond to conclude that government was permitting ordinary people to be harmed. Of course none of this excuses the conduct on January 6, but it was a uniquely stressful and anxious time for Mr. Bond.

18 U.S.C. 3553(a)(2) (A)-(D) **The need for the sentence imposed-** Mr. Bond requests that this Court grant him the benefit of probation and submits that his very limited and remote criminal record and compliance on pretrial release and pending sentencing indicate that he is a good candidate for probation. Additionally, Mr. Bond was charged roughly a year and a half after the events of January 6, 2021, and did not attempt to commit any similar offenses (or any offenses whatsoever) prior to being charged.

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;** This is a class B misdemeanor and a number of other people who have pleaded guilty to the same offense have received probation. The imposition of restitution, a suspended sentence and, if the court sees fit, community service fulfills the goals of this factor.

**(B) to afford adequate deterrence to criminal conduct;** While deterrence is an important and necessary goal of the criminal justice system, in this case, the nature and extent of Mr. Bond's conduct makes this a poor case to deter others. Simply the threat of proscution and a drawn out legal proceeding is enough to dissuade most people in Mr. Bond's position

6

from engaging in similar conduct in the future.

**(C) to protect the public from further crimes of the defendant;** There is absolutely no evidence that Mr. Bond would engage in similar or other criminal conduct in the future.  To the contrary, the circumstances in Mr. Bond's personal life and the effect that COVID had on his ability to work and his state of mind are unlikely to ever occur again.

**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner** – Mr. Bond agrees with the report that he does not require services of this sort.

18 U.S.C. 3553(a)(3)   **The kinds of sentences available -** The report accurately describes the kinds of sentences available.

18 U.S.C. (a)(4) and (a)(5) are not addressed because the guidelines to not apply to Class B misdemeanors.

18 U.S.C. 3553(a)(6)   **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct** – The defendant has not yet had a chance to look in depth at the sentences handed out and the conduct on which the sentences were based.  However, it does seem from a cursory glance that many of the instances in which a defendant has plead to 40 U.S.C. 1752(e)(2)(G) and the government has requested incarceration, the court imposed a sentence of home detention or probation.

18 U.S.C. 3553(a)(7)   **The need to provide restitution to any victims of the offense.**  The parties have agreed that $500 in restitution is appropriate in this matter and Mr. Bond requests the court to order that amount in restitution.

For the foregoing reasons, the Defendant, Stacy Lee Bond, respectfully requests that this Court impose the restitution amount of $500 and special assessment of $10 contemplated in the plea agreement, grant him the benefit of probation and tailor the term of probation and suspended sentence to reflect both the Defendant's minimal criminal record and behavior since January 6 both prior to pretrial supervision and while on it.

8

Respectfully Submitted,

_/s/ Joseph W. Fay_____

Joseph W. Fay

Bar No.: MD17769

JOSEPH W. FAY ESQ., PLLC

6205 Executive Blvd.

Rockville, MD 20852

202-618-6549 (direct)

202-557-1306 (cell)

Joseph.W.Fay@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2022, a copy of the foregoing was served upon the Assistant United States Attorney assigned to this matter, Mr. Whitesel, by email at nathaniel.whitesel@usdoj.gov.

_/s/ Joseph W. Fay_____

Joseph W. Fay